UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

NATIONAL AUTO LENDERS, INC.,
a Florida Corporation

          Plaintiff,

v.

SYSLOCATE, INC., a Delaware Corporation, DRIVEOK, INC., a California Corporation, and PROTECT & CONNECT, INC., a Tennessee Corporation, and as successor in interest to SYSLOCATE, INC., and DRIVEOK, INC.

          Defendants.

_____/

Civil Action No.:   09-21765-CIV-COOKE/BANDSTRA

**DEFENDANTS, SYSLOCATE, INC., DRIVEOK, INC. AND PROCON, INC.'S MOTION TO DISMISS AND/OR TRANSFER VENUE AND STAY PROCEEDINGS TO COMPEL MEDIATION AND ARBITRATION**

NOW INTO COURT, through undersigned counsel, come the Defendants, SYSLOCATE, INC., ("SysLOCATE"), DRIVEOK, INC., ("DriveOK"), and PROCON, INC., ("PROCON") and as successor in interest to SysLOCATE, INC., and DriveOK, INC. (hereinafter referred to as "Defendants"), and hereby request this Court to enter an Order: (1) dismissing Plaintiff's claim and/or transferring venue to Tennessee pursuant to a valid venue/forum clause signed by the parties; and (2) dismissing or staying the instant action to compel mediation and arbitration pursuant to a valid mediation and arbitration clause signed by the parties, and relies upon Federal Rules of Civil Procedure 12(b)(3), 28 U.S.C.A. §1404(a), and 9 U.S.C. § 3 and in further support thereof, state as follows:

1.      Defendants SysLOCATE, a Delaware corporation, and DriveOK, a California corporation, were jointly in the business of developing, manufacturing, marketing and selling Global Positioning Satellite (GPS) enabled vehicle tracking unit products ("GPS tracking units") to automobile dealers, rental car companies and auto finance companies. [See Plaintiffs' Complaint, Exhibit 1, attached hereto]

2.      Defendant PROCON, a Tennessee corporation, is in the same business as SysLOCATE and DriveOK, and manufactures, develops, markets, and sells GPS vehicle trackers to automobile dealers, rental car companies and auto finance companies.  [See Id.]

3.      In March 2007, NATIONAL AUTO LENDERS, INC., (hereinafter referred to as "NAL" and/or "Plaintiff"), a Florida Corporation,  began contracting with SysLOCATE and DriveOK for purchase of GPS tracking units via Defendants' website.  [See Id.]

4.      In November 2008, PROCON merged with SysLOCATE and DriveOK, and PROCON is now the surviving corporation, successor in interest, to SysLOCATE and DriveOK, and continues to operate the same business as was formerly operated by said companies.  [See Id.]

5.      PROCON initiated a Subscription Service click-to-accept agreement on its web sites in June 2008, and specifically to its GPS tracking web sites used by Plaintiff in April 2009,  which asked parties to electronically agree to said agreements prior to using tracking services.   An amended version of the Subscription Service Agreement was uploaded to the GPS tracking web sites in May 2009. [See Affidavit of Mark Wells, Exhibit 4, attached hereto.]

6.      A Master Marketing click-to-accept was introduced to PROCON's Distributor web sites in May 2009, which asked parties to electronically agree to said agreements prior to placing orders. [See Subscription Service Agreement, Exhibit 2, attached hereto; Master Marketing

Agreement, Exhibit 3, attached hereto; Affidavit of Mark Wells, Exhibit 4, attached hereto. ]

7. The agreements were instituted to establish certain operating policies and procedures for all PROCON's customers and distributors and to protect PROCON's interest, as SysLOCATE and DriveOK had previously operated without agreements. [See Affidavit of Mark Wells, Exhibit 4, attached hereto. ]

8. The agreements have applicable mediation and arbitration and venue clauses. Specifically, the May 2009 Master Marketing Agreement reads:

> 31.   Mediation/Arbitration.
> (a)   Except as provided in Section 21(g)[1], in the event of any dispute, disagreement, claim, or any other cause of action of any kind or nature related to, under, or otherwise in connection with this Agreement, the parties hereto desire to avoid litigation. Accordingly, the aggrieved party will give notice of the dispute to the other party and both parties will attempt to settle the dispute during the thirty (30) day period following such notice. If such dispute remains unsettled, the parties agree to then submit such dispute to mediation. If the parties cannot agree on a mediator, each will select a mediator and the two chosen mediators will select a third mediator who shall alone hear the dispute. Such mediation will, if possible, be conducted during the sixty (60) day period following the expiration of the thirty (30) day period. If such mediation fails to resolve the dispute, the parties agree such dispute will be submitted to final and binding arbitration in accordance with the rules of the American Arbitration Association. Unless otherwise directed by the arbitrator, such arbitration must be concluded within ninety (90) days of the expiration of the sixty (60) day period previously specified for mediation. If the parties cannot agree on a single arbitrator, each will select an arbitrator, and the two chosen arbitrators will select a third arbitrator who shall alone decide the dispute. Any mediation or arbitration conducted hereunder will be conducted in Knoxville, Tennessee. The parties hereto shall equally share the costs of mediation (including the mediator's fees and expenses and costs directly related to the conduct of the mediation, but excluding each

---

[1] Said clause refers to injunctive relief for harm and damages that would result from certain breach of contract provisions not at issue in this cause of action.

party's direct costs for transportation, attorneys, etc., for which each will be responsible.) If any party fails to participate in mediation or arbitration after receipt of notice thereof, then each party hereto agrees that the other party shall have the right to proceed immediately to arbitration and that such other party shall be entitled to select the arbitrator in its sole discretion. Each party further agrees that, in such event, such arbitrator shall have the right to decide the dispute as if the non-participating party were participating in the arbitration and that such decision shall be final and binding upon each party hereto.

32.   Venue. Except as specifically set forth in Section 21(g)[2], it is the express intent of the parties that any dispute under this Agreement be decided in accordance with the mediation and arbitration provisions contained in Section 31 hereof. Notwithstanding the foregoing, in the event a court refuses to enforce the provisions contained in Section 31 for any dispute or, in the event a court is asked to decide a dispute concerning the provisions contained in Section 31, the parties expressly agree that jurisdiction and venue for actions under or pursuant to this Agreement shall be solely in any state court in Knox County, Tennessee, or the Federal District Court for the Eastern District of Tennessee, Northern Division, sitting in Knoxville, Tennessee.

[See Master Marketing Agreement, Exhibit 3, attached hereto.]

9.   The May 2009 Subscription Service Agreement states:

17. **MEDIATION/ARBITRATION -**
(a)   In the event of any dispute under this Agreement, the parties hereto desire to avoid litigation. Accordingly, the aggrieved party will give notice of the dispute to the other party and both parties will attempt to settle the dispute during the thirty (30) day period following such notice. If such dispute remains unsettled, the parties agree to then submit such dispute to mediation. If the parties cannot agree on a mediator, each will select a mediator and the two chosen mediators will select a third mediator who shall alone hear the dispute. Such mediation will, if possible, be conducted during the sixty (60) day period following the expiration of the thirty (30) day period. If such mediation fails to resolve the dispute, the parties agree such dispute will be submitted to final and binding arbitration in

---

[2]  Said clause refers to injunctive relief for harm and damages that would result from certain breach of contract provisions not at issue in this cause of action.

accordance with the rules of the American Arbitration Association. Unless otherwise directed by the arbitrator, such arbitration must be concluded within ninety (90) days of the expiration of the sixty (60) day period previously specified for mediation.  If the parties cannot agree on a single arbitrator, each will select an arbitrator, and the two chosen arbitrators will select a third arbitrator who shall alone decide the dispute.  Any mediation or arbitration conducted hereunder will be conducted in Knoxville, Tennessee.  The parties hereto shall equally share the costs of mediation (including the mediator's fees and expenses and costs directly related to the conduct of the mediation, but excluding each party's direct costs for transportation, attorneys, etc., for which each will be responsible.)  If any party fails to participate in mediation or arbitration after receipt of notice thereof, then each party hereto agrees that the other party shall have the right to proceed immediately to arbitration and that such other party shall be entitled to select the arbitrator in its sole discretion.  Each party further agrees that, in such event, such arbitrator shall have the right to decide the dispute as if the non-participating party were participating in the arbitration and that such decision shall be final and binding upon each party hereto.

18.  **VENUE** - It is the express intent of the parties that any dispute under this Agreement be decided in accordance with the mediation and arbitration provisions contained in Section 17 hereof.  Notwithstanding the foregoing, in the event a court refuses to enforce the provisions contained in Section 17 for any dispute or, in the event a court is asked to decide a dispute concerning the provisions contained in Section 17, the parties expressly agree that jurisdiction ad venue for any actions under or pursuant to this Agreement shall be solely in any state court in Knox County, Tennessee, or the Federal District Court for the Eastern District of Tennessee, Northern Division, sitting in Knoxville, Tennessee.

[See Subscription Service Agreement, Exhibit 2, attached hereto.]

10. Based on their terms, the agreements supercede any prior agreements entered into between the parties and apply retroactively. Specifically, the May 2009 Master Marketing Agreement states:

1. Authorization to market.  Subject to terms and conditions of this Agreement, Company hereby authorizes Marketer, on a non-exclusive basis, to market those Company's products which

>Company in its sole and absolute discretion determines from time to time that Marketer may market ("Products"). Marketer acknowledges and agrees the terms of this Agreement apply to the sale and distribution of any other products Marketer may be, or may have been, authorized to distribute ("Other Products") by Company or any business to which Company is the successor ("Predecessor"), and that the terms of this Agreement supersede the terms of any prior or contemporaneous agreement between Company and/or Predecessor and Marketer relating to the marketing of Products or Other Products, whether made orally or in writing.

[See Master Marketing Agreement, Exhibit 3, attached hereto]

11. The May 2009 Subscription Service Agreement contains a similar clause. It states:

>**THIS AGREEMENT CONTAINS THE TERMS AND CONDITIONS WHICH APPLY TO THE GPS PRODUCT(S) YOU HAVE PURCHASED OR ARE PURCHASING, WHETHER PURCHASED FROM COMPANY, A DISTRIBUTOR, AGENT OR FROM ANY ENTITY ACQUIRED BY COMPANY (COLLECTIVELY THE "PRODUCT") AND UPON WHICH COMPANY WILL PROVIDE OR HAS PROVIDED TO YOU THE SERVICES (AS DEFINED BELOW) RESPECTING SUCH PRODUCT. YOU SPECIFICALLY AGREE THAT THIS AGREEMENT SUPERCEDES ANY PRIOR OR CONTEMPORANEOUS AGREEMENT BETWEEN YOU AND ANY PERSON OR ENTITY, WHETHER WRITTEN OR ORAL, WITH RESPECT TO ANY PRODUCT AND/OR SERVICES, AS DEFINED HEREIN. NOTWITHSTANDING THE FOREGOING, IF YOU ARE A DISTRIBUTOR, SALES REPRESENTATIVE OR OTHER PERSON OR ENTITY WHO HAS PURCHASED A PRODUCT FOR THE PURPOSE OF RESALE, THEN THE TERMS OF THIS AGREEMENT WILL ONLY SUPERCEDE ANY PRIOR OR CONTEMPORANEOUS AGREEMENT BETWEEN YOU AND COMPANY TO THE EXTENT THE PROVISIONS OF SUCH PRIOR OR CONTEMPORANEOUS AGREEMENT CONFLICT WITH THE TERMS HEREIN, IT BEING THE INTENT OF ALL PARTIES THAT THE TERMS OF THIS AGREEMENT SHALL GOVERN.**

[See Subscription Service Agreement, Exhibit 2, attached hereto]

12. On April 20, 2009, Plaintiff sent correspondence to Defendants regarding the substance of the aforementioned agreements.[3] Plaintiff referenced the April 2009 Subscription Service Agreement and objected to Defendants' Liability Limitation and Warranty Exclusion clauses, advising that the retroactivity of the clauses would, in effect, thwart Plaintiff's current claim. It should be noted that the April 2009 Subscription Service Agreement contained Mediation and Arbitration and Venue clauses that were **never** referenced by Plaintiff. [See April 20, 2009, Letter from Plaintiff's Counsel, Exhibit 5, attached hereto]

13. Again on April 27, 2009, Plaintiff's counsel sent another letter to Defendants in an attempt to confirm a telephone conversation relating to the application of the Subscription Service Agreement. Plaintiff asked that any inconsistencies be clarified in a follow-up letter. [See April 27, 2009, Letter from Plaintiff's Counsel, Exhibit 6, attached hereto]

15. In response, Defendants' counsel drafted a letter to Plaintiff's counsel, dated May 1, 2009. In said letter, Defendants stated: "I did not agree during our conversation that my client would not use the Goldstar Agreement as a defense to your client's claims related to products purchased from SysLOCATE as you assert in your April 27, 2009 letter." Counsel went on to state that "my client has agreed not to assert that the Goldstar Agreement[4] bars any of your client's claims related to products purchased from SysLOCATE." [See May 1, 2009 letter by Defendants, Exhibit 7, attached hereto]

---

[3] It should be noted that Plaintiff accepted the April 2009 Subscription Service click-to-accept agreement in April 2009. [See Affidavit of Mark Wells, Exhibit 4, attached hereto. ]

[4] As expressed in the letter, Defense counsel uses the term "Goldstar Agreement" to refer to the Subscription Service Agreement referenced by and attached to Plaintiff counsel's demand letter dated April 20, 2009. [See April 20, 2009, Letter from Plaintiff's Counsel, Exhibit 5, attached hereto]

15. Shortly thereafter, Plaintiff electronically signed the May 2009 Subscription Service Agreement on May 29, 2009, and electronically signed the May 2009 Master Marketing Agreement on June 1, 2009. [See Affidavit of Mark Wells, Exhibit 4, attached hereto.]

16. Thereafter, the Plaintiff, filed this action against Defendants seeking to recover damages against Defendants for Fraudulent and Negligent Misrepresentation, Breach of Express and Implied Warranties, and Violation under the Unfair and Deceptive Trade Practices Act, allegedly arising from transactions between the parties occurring from March 2007 through April 2008. [See Plaintiffs' Complaint, Exhibit 1, attached hereto]

17. Plaintiff filed suit in Federal Court in the Southern District of Florida on June 26, 2009. [See Id.]

18. Based on the foregoing, Defendants hereby move to dismiss Plaintiff's action and/or move to transfer venue, pursuant to the parties' existing agreements. Florida is not the proper venue for the instant case, and as such, Plaintiff's Complaint should be transferred to the Federal District Court for the Eastern District of Tennessee, Northern Division, as provided for in those agreements. Additionally, Defendants seek to dismiss or stay proceedings and compel the mediation and arbitration provisions of the parties' existing agreement.

## MEMORANDUM OF LAW

### I. Transfer of Venue

28 U.S.C. § 1404(a) (2003) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404 has been applied by both the United States Supreme Court and the Eleventh Circuit to venue transfer decisions predicated upon forum selection clauses.

See Stewart Organization, Inc. v. Ricoh Corp, 487 S.Ct. 2239 (1988); In Re Ricoh Corp., 870 F.2d 570 (11th Cir. 1989).

### a. **Application of 28 U.S.C. § 1404(a)**

According to the Supreme Court, district courts applying section 28 U.S.C. § 1404(a) to choice of forum disputes in diversity cases, should consider "the convenience of the parties and witnesses" and "the interest of justice," with a choice of forum clause being "a significant factor that figures centrally in the district court's calculus." Stewart Organization, Inc. v. Ricoh Corp., 108 S.Ct. 2239 (1988).

While the federal courts traditionally have accorded a plaintiff's choice of forum considerable deference[5], when, however, the parties have entered into a contract containing a valid, reasonable choice of forum provision, the burden of persuasion is altered. In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989). The Eleventh Circuit further states:

> In attempting to enforce the contractual venue, the movant is no longer attempting to limit the plaintiff's right to choose its forum; rather, the movant is trying to enforce the forum that the plaintiff had already chosen: the contractual venue. In such cases, we see no reason why a court should accord deference to the forum in which the plaintiff filed its action. Such deference to the filing forum would only encourage parties to violate their contractual obligations, the integrity of which are vital to our judicial system.

Id. Thus, when a motion under the federal change of venue statute seeks to enforce a valid, reasonable choice of forum clause, the opponent bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute. 28 U.S.C.A. § 1404(a). XR Co. v. Block & Balestri, P.C., 44 F.Supp.2d 1296 (S.D.Fla. 1999). The validity of

---

[5] See Gulf Oil Corp. v. Gilbert, 67 S.Ct. 839, 843 (1947).

a forum selection clause is determined under the usual rules governing the enforcement of contracts in general. P & S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804 (C.A.11 (Ala.) 2003). "Considering whether the clause was 'freely and fairly negotiated by experienced business professionals' and whether there was any fraud, duress, misrepresentation, or other misconduct in connection with the agreement to the forum selection clause" is key. Id. (citing In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989)).

Here, the venue provisions under both the May 2009 Subscription Service Agreement and the May 2009 Master Marketing Agreement electronically signed by Plaintiff are conspicuous. Specifically, the venue provision in the May 2009 Master Marketing Agreement is contained within its own numbered clause, and has its own underlined heading indicating that it is a venue provision. Further, the venue provision contained in the May 2009 Subscription Service Agreement goes one step further. In addition to being contained in its own clause and stating that it is a venue provision, the heading for the provision is also in capital, bold face letters. Furthermore, the language of each venue provision is clear as each states:

> [p]arties expressly agree that jurisdiction and venue for any actions under or pursuant to this Agreement shall be solely in any state court in Knox County, Tennessee, or the Federal District Court for the Eastern District of Tennessee, Northern Division, sitting in Knoxville, Tennessee."

As to validity of the contracts themselves, there is no question that both Plaintiff and Defendants intended to enter into both agreements. Defendant PROCON drafted the contracts and incorporated it into its retail and distribution website in order to protect its rights. Prior to initiation of the contracts, Defendants were conducting business without operating agreements. Clearly, Defendants' lack of established operating procedures and vulnerability prompted it to draft said

agreements, and intend the agreements to supercede all prior oral agreements. Plaintiff desired to utilize and purchase products from Defendants, and exhibited sufficient consideration to enter into contract, and even communicated with the Defendants regarding applicable contract provisions. All parties are sophisticated seasoned business professionals. Moreover, acceptance by Plaintiff by way of electronic signatures was obtained for both the April 2009 and May 2009 Subscription Service Agreements in April 2009 and May 29, 2009, respectively. And, acceptance was obtained for the Master Marketing Agreement on June 1, 2009.

As is evident from correspondence between Plaintiff and Defendants, there was equal bargaining power, and a meeting of the minds. Plaintiff's letter, dated April 20, 2009, specifically refers to PROCON's April 2009 Subscription Service Agreement, which contained mediation and arbitration as well as venue provisions and shows that Plaintiff read the contract, acknowledged that it had retroactive application, and disagreed with certain provisions contained therein. Specifically, Plaintiff disagreed with certain limitation of liability provisions contained within the April 2009 Subscription Service Agreement, and advised it would not sign the agreement should such provisions apply to the controversy in question. In any case, Plaintiff signed the April 2009 Subscription Service Agreement in April 2009. Consequently, Defendants' response confirmed that the liability limitation provisions contained in the April 2009 Subscription Service Agreement would not apply to the lawsuit in question. Thereafter, Plaintiff signed the May 2009 Subscription Service Agreement on May 29, 2009. Plaintiff also signed the May 2009 Master Marketing Agreement on June 1, 2009 with no objections to its terms. This act by Plaintiff leads to the conclusion that Plaintiff accepted all other terms delineated in the April 2009 and May 2009 Subscription Service Agreements, and all of the terms stated in the May 2009 Master Marketing Agreement.

Furthermore, both Florida and Tennessee enacted the Uniform Electronic Transaction Act, (UETA) which essentially gives electronic agreements the same legal validity as paper contracts. See 39 Fla. Stat. § 668.50 (2000); Tenn. Code Ann. § 47-10-101 (2001). UETA states:

> (a) A record or signature may not be denied legal effect or enforceability solely because it is in electronic form;
> (b) A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation;
> (c) If a law requires a record to be in writing, an electronic record satisfies the law;
> (d) If a law requires a signature, an electronic signature satisfies the law.

39 Fla. Stat. § 668.50(7) (2000); Tenn. Code Ann. § 47-10-107 (2001.) As such, the electronic signatures obtained from Plaintiff in this instance are legally sufficient and are of binding effect.

Additionally, the venue provisions here are reasonable as PROCON is a company incorporated in Tennessee and has its headquarters located in Knoxville, Tennessee. There are voluminous documents that may potentially be produced through discovery in the instant lawsuit. The majority of key witnesses and documents relevant to this suit are located in Defendants' headquarters. During important depositions, hearings and even at trial, original documents might well be needed. It is inconvenient and unreasonable to ask Defendants to continuously either ship or travel with a large amount of documents in order to assist in their defense.

Lastly, in this case, there was no fraud, duress, coercion, of misrepresentation, as each party had an ample opportunity to carefully analyze the terms of the contracts in question, appreciate them, and modify them prior to entering into contract. Had there been any disagreement regarding other applicable terms, they certainly would have been addressed by Plaintiff prior to entering into said agreements. Plaintiff's electronic signatures show a clear intent to accept the negotiated terms to the

April 2009 and May 2009 Subscription Service Agreements, and all of the terms of the May 2009 Master Marketing Agreement. Consequently, Defendants here only seek to enforce and give effect to those terms that were agreed upon by the parties upon entering into each contract.

### II.     Mediation/Arbitration Clause

Alternative dispute resolution is a valuable right that is inserted into contracts for the purpose of enhancing the effective and efficient resolution of disputes. See Raymond James Financial Services, Inc. v. Saldukas, 896 So. 2d 707, 711 (Fla. 2005). These provisions are generally favored by the courts. Id. Arbitration acts, specifically those at issue in the case at hand, are governed by the The Federal Arbitration Act ("The Act"), 9 U.S.C. § 1. Section 2 of the Act provides, in part as follows:

> 1. A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "Section 2 is a declaration by Congress of the liberal federal policy favoring arbitration agreements." Senti v. Sanger Works Factory, Inc., 2007 WL 1174076, *4 (M.D.Fla. April 18, 2007). "Section 3 of the Act requires that upon a motion by a party, the court must stay an action if an action is brought which is referable to arbitration under a written agreement." Oberstar v. Divosta Homes, L.P., 2008 WL 4811408, * 4 (M.D.Fla. Nov. 5, 2008) (citing Castro v. Newport Bay Corp., 2008 WL 4415424, *3 (M.D.Fla. September 25, 2008) (citing 9 U.S.C. § 3)).

Any issue arising as to the validity of the arbitration provision, and whether the parties agreed to arbitrate is decided by the court and not the arbitrator, unless the agreement clearly provides otherwise. Senti, 2007 WL 1174076 at * 4. "Generally, when deciding whether the parties agreed under the FAA to arbitrate a certain matter, courts 'should apply ordinary state-law principles that govern the formation of contracts.' " Id. at * 5 (quoting First Options of Chicago, Inc. v. Kaplan, 115 S.Ct. 1920 (1995)).

Here, as previously explained, all parties to this suit intended to enter into the contracts in question. There was bargaining on applicable terms by each side, and a meeting of the minds that culminated in Plaintiff's electronic signature of both contracts. Plaintiff was clearly aware of the retroactive application of the contracts as stated in its counsel's correspondence to Defendants. Any objections to said provision would have been stated at that time.

Nonetheless, should any disagreement result as to the enforceability or application of the mediation and arbitration provision, it is to be decided by the Court. However, because Defendants currently seek to transfer venue to Knoxville, Tennessee, it is Defendants' position that Tennessee law should dictate. As such, Defendants request that any issue relating to the enforceability or validity of the mediation and arbitration provisions contained in the contracts in question, be decided once the Court has ruled on Defendants' Motion to Dismiss and/or Transfer Venue. Defendants' Motion to Dismiss or Stay Proceedings and Compel Mediation and Arbitration is brought forth at this time in an abundance of caution to preserve Defendants' argument and preclude waiver of their rights.

In light of the foregoing, fairness dictates that this case be dismissed and/or transferred as per the requirements of the valid, reasonable, and bargained for forum selection clauses present in the

case at hand, and that proceedings be dismissed or stayed to compel mediation and arbitration as per the terms agreed to by all parties.

**Local Rule 7.1.A.1(j) Certification**

The Undersigned has made reasonable efforts to confer with all parties or non-parties who may be affected by the relief sought in this motion, specifically by contacting Plaintiff's counsel via telephone and by facsimile correspondence, but has been unable to confer with Plaintiff.

Dated: August 14, 2009                                KUBICKI DRAPER, P.A.
                                                       Attorneys for Defendants
                                                       City National Bank Building
                                                       25 West Flagler Street, Penthouse
                                                       Miami, Florida 33130
                                                       Direct Line: (305) 982-6632

                                           By:         /s/ Steve W. Cornman
                                                       STEVE W. CORNMAN, ESQ.
                                                       sc@kubickidraper.com
                                                       Florida Bar No.: 0755281

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 14, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list in the manner specified, either via transmissions of Notices of Electronic Filing generated by CM/ECF or by U.S. mail for those counsel who are not authorized to receive electronic Notices of Electronic Filing.

                                                       /s/ Steve W. Cornman

**SERVICE LIST**

Elizabeth M. Bohn, Esq.
Jorden Burt, LLP
777 Brickell Avenue, Suite 500
Miami, FL 33131
*Counsel for the Plaintiff*