UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

NATIONAL AUTO LENDERS, INC.,
a Florida Corporation

                     Plaintiff,

v.

SYSLOCATE, INC., a Delaware Corporation, DRIVEOK, INC., a California Corporation, and PROTECT & CONNECT, INC., a Tennessee Corporation, and as successor in interest to SYSLOCATE, INC., and DRIVEOK, INC.

                     Defendants.

Civil Action No.:   09-21765-CIV-COOKE/BANDSTRA

_____/

### DEFENDANTS, SYSLOCATE, INC., DRIVEOK, INC. AND PROCON, INC.'S REPLY & MEMORANDUM TO PLAINTIFF'S RESPONSE & MEMORANDUM OPPOSING DEFENDANTS' MOTION TO DISMISS AND/OR TRANSFER VENUE AND STAY PROCEEDINGS TO COMPEL MEDIATION AND ARBITRATION

NOW INTO COURT, through undersigned counsel, come the Defendants, SYSLOCATE, INC., ("SysLOCATE"), DRIVEOK, INC., ("DriveOK"), and PROCON, INC., ("PROCON") and as successor in interest to SysLOCATE, INC., and DriveOK, INC. (hereinafter referred to as "Defendants"), and file their Reply and Memorandum to Plaintiff's Response and Memorandum Opposing Defendants' Motion to Dismiss and/or Transfer Venue and Stay Proceedings to Compel Mediation and Arbitration under Rule 7.1(C)(2), Southern District Court of Florida Local Rules, and in support thereof, state as follows:

1.     In April 2009, Defendants posted an April 2009 Subscription Service Agreement to their Goldstar GPS tracking web sites, which applied to all of its customers, including National Auto

Lenders, (hereinafter "NAL.") [D.E. 26].

2. After a series of negotiations between NAL and Defendants' attorneys, NAL electronically signed and accepted the terms of the April 2009 Subscription Service Agreement without protest to either the venue and mediation/arbitration clauses therein. NAL also electronically signed the Amended May 2009 Subscription Service Agreement, again agreeing to the venue and mediation/arbitration provisions contained in the contract. [Id.].

4. Furthermore, NAL electronically signed the May 2009 Master Marketing Agreement posted by Defendants on its Goldstar distributor portals. Similar to the Subscription Service Agreement, the Master Marketing Agreement contained venue and mediation/arbitration clauses which had retroactive superceding application. [Id.].

5. In consideration for entering into the agreements, Defendants granted NAL the right to operate as a Goldstar distributor and purchase Goldstar units. [Id.].

6. Contrary to Plaintiff's *ad nauseum* allegations of trickery and deceit, Plaintiff's counsel had the benefit of reading and negotiating the contracts in question on behalf of NAL prior to assenting to their terms. [Id.].

7. As stated multiple times in Plaintiff's motions and affidavits, NAL accepted the terms of the contract in order to continue doing business with NAL. Stated simply, Plaintiff had the choice of agreeing to the contracts in question or discontinuing its business relationship with Defendants. NAL chose to accept the terms of the agreements and continue a mutually profitable business relationship with Defendants. [D.E. 34].

## **MEMORANDUM OF LAW**

**I.     The Subscription Service and Master Marketing Agreements entered into by Plaintiffs and Defendants are enforceable as there was mutuality of obligation by both parties.**

Florida law dictates that an "agreement" is a manifestation of mutual assent by two or more persons.  See <u>Kislak v. Kreedian</u>, 95 So. 2d 510 (Fla. 1957).  Where both parties are bound by contractual provisions, mutuality exists, and those terms are held enforceable.  See <u>Kinko's, Inc. v. Payne</u>, 901 So. 2d 354 (Fla. 2d DCA 2005).  Furthermore, when both parties are obligated in many particulars by a contract, the contention that the contract lacks mutuality is without merit.  See <u>Standard Lumber Co. v. Florida Industrial Co.</u>, 141 So. 729 (1932).  A subsequent difference as to the construction of the contract does not affect the validity of the contract or indicate the minds of the parties did not meet with respect thereto, under Florida law.  See <u>Tingley Sys, Inc. v. HealthLink, Inc.</u>, 509 F. Supp. 2d 1209 (M.D.Fla. 2007).

Here, it is clear that Plaintiff and Plaintiff's counsel understood that the Subscription Service and Master Marketing Agreements encompassed all prior dealings between the entities, and the contracts had retroactive application.  This was evidenced by Plaintiff counsel's correspondence and negotiation with Defense counsel.  In those negotiation talks, Plaintiff's counsel acknowledged that the terms of the April 2009 Subscription Service Agreement would apply to other products and prior agreements entered into by the parties, and requested that Plaintiff be allowed to seek damages it claims to have suffered as a result of those prior dealings.  Defendants acquiesced.  Thus, Plaintiff appreciated the obligations it was bound to as a result of executing the April 2009 Subscription Service Agreement.  Likewise, Procon bound itself by the terms of the contracts in question in

exchange for promises made by Plaintiff. Therefore, actions committed by the parties in this instance clearly show mutuality of obligation by the parties.

**II.     The Subscription Service and Master Marketing Agreements entered into by Plaintiffs and Defendants are enforceable as Plaintiff assented to the terms contained therein, and/or ratified the contracts by acquiescence.**

Plaintiff does not dispute that a NAL employee clicked on both the Subscription Service and Master Marketing agreements. Instead, Plaintiff argues that an unidentified person, to whom NAL provided corporate passwords, clicked on the agreements without permission; and therefore, unfairly bound NAL to the contracts. [D.E. 36 p. 11; D.E. 35 p. 16]. However, according to the Plaintiff, only 15 NAL employees have access to the web sites operated by Defendants. [D.E. 35 p. 11]. These employees were apparently given strict instructions via internal correspondence not to accept the subject contracts. [D.E. 36 p. 10]. Additionally, the only NAL officers authorized to enter into these agreements, now submit two self-serving affidavits to this Court essentially stating, "it wasn't me." All the while, NAL accepted the terms of the subject contracts, and more importantly, continued to conduct business with Defendants.

NAL signed the contracts in question, and did so with apparent authority based on NAL's prior dealings with Defendants. Under Florida law, a corporation is bound to a contract entered into by its officer, or by another agent that is held out or has been permitted to act in such a way as to justify third persons who deal with him to infer that he is making a contract within the scope of his authority. <u>Edward J. Gerrits, Inc. v. McKinney</u>, 410 So. 2d 542, 544 (Fla. 1st DCA 1982). During the course of dealings with Defendants, Plaintiff accessed Defendants distributor web sites to purchase and manage GPS units. [D.E. 34 p. 12; D.E. 35 § 36]. The web sites accessed by NAL

employees were those in which the subject contracts were ultimately posted. Consequently, the actions taken by those NAL employees with access to Defendants distributor web sites represented apparent authority to enter into contracts on behalf of Plaintiff.

In its Response, Plaintiff points to correspondence sent to Defendants in November 2008, advising that NAL employees had no authority to enter into an End User License Agreement posted by Defendants on a separate web site. [D.E. 36 ¶ 12]. However, the End User License Agreement referenced by Plaintiff is not the subject of Defendants' Motion, and no provisions contained therein are cited as relevant to Defendants' current argument. Plaintiff also points to internal correspondence by NAL requesting employees not sign the contracts in question. [Id. at ¶ 12]. However, NAL's internal memoranda never seen by Defendants is completely insufficient to put Defendants on notice that NAL employees did not have authority to click on the Subscription Service and Master Marketing agreements.

Nonetheless, even if the contracts were clicked on without authorization by NAL officers, the employees' actions were accepted and ratified by NAL. A corporation may ratify any unauthorized act or contract made or done on its behalf, which it was capable of making or doing in the first instance, provided the action is not prohibited by the corporation's charter, by statute, or is not contrary to public policy. See Chapman v. St. Stephens Protestant Episcopal, 136 So. 238 (Fla. 1931), *modified on other grounds on reh'g*, 145 So. 757 (Fla. 1933). Thus, the president or general manager may ratify an act or contract which is within the scope of his or her authority, but which has been done or made by another without authority. Id. Ratification of an unauthorized act of a corporate officer or agent may be implied from the acquiescence in or recognition of the unauthorized transaction by the corporation. Id. Thus, the doctrine of ratification precludes the

principal from accepting the benefits of an agent's actions while simultaneously disclaiming the agent's authority to act.  See United Chemicals, Inc. v. Welch, 460 So. 2d 540 (Fla. 1st DCA 1984).

Here, NAL was fully aware that the April 2009 Subscription Service Agreement went up on Defendants' web sites prior to accepting them, as referenced numerous times in Plaintiff's Response to Defendants' Motion. [D.E. 34].  Plaintiff's attorney then had the opportunity to review the terms and clauses of the contract and discuss them with Defendants' counsel.  At no point during communications between Plaintiff and Defense counsel, was there any indication that the contracts would be removed from the relevant web sites.  After the negotiations, the contracts had to be signed in order for Plaintiff to operate as a Procon distributor.  NAL itself recognizes that the web sites could not be accessed until the contracts were signed. [D.E. 35 § 62].  Thereafter, plaintiff signed the contracts in question.  Even if Plaintiff's employees signed the contracts without authorization, NAL, nonetheless, ratified the contracts by continuing to place orders on Defendants' web sites.  Under applicable case law, NAL cannot now disclaim its employees authorization to enter into said contracts, all the while accepting the benefits of the contracts.  Thus, by continuing to purchase Defendants' GPS units, NAL  assented to the agreements and ratified the Subscription Service and Master Marketing Agreements by acquiescence.

**III.    The Subscription Service and Master Marketing Agreements entered into between the parties were enforceable as there was sufficient consideration present to bind Plaintiff**

According to NAL, the Subscription Service and Master Marketing agreements fall under the authority of Article 2 of the Uniform Commercial Code (UCC). [D.E. 34 p. 14]. 39 F.S.A. §§ 672.106(1) (2006) specifically states:

> In this chapter unless the context otherwise requires "contract" and "agreement" are limited to those relating to the present or future sale of goods. "Contract for sale" includes both a present sale of goods and a contract to sell goods at a future time. A "sale" consists in the passing of title from the seller to the buyer for a price.

Plaintiff states that Defendants attempted to "modify the already existing agreements evidenced by NAL's [prior] purchase[s]." [D.E. 34 p. 14]. Under 39 F.S.A. §§ 672.209(1) (2006), "[a]n agreement modifying a contract within [Article 2, Sales] needs no consideration to be binding." Therefore, under the UCC provision applicable in this instance, no consideration was needed to bind NAL to the Subscription Service and Master Marketing agreements. Its acceptance of the contracts was sufficient to hold the contracts enforceable against NAL.

In the alternative, should consideration be necessary, sufficient consideration was present in this instance. While the parties had entered into prior agreements for purchase of GPS units for distribution purposes, the agreements in no way bound Plaintiff for a definite term. Plaintiff could have discontinued purchasing Defendants' GPS units at any time before entering into the Subscription Service and Master Marketing Agreements. Under Florida law, a promise, no matter how slight, qualifies as "consideration" for a contract, if the promisor agrees to do something that he or she is not already obligated to do. See Cintas Corp. No. 2 v. Schwalier, 901 So. 2d 307 (Fla. 1st DCA 2005); Diaz v. Rood, 851 So. 2d 843 (Fla. 2d DCA 2003). Here, upon Defendants' posting of the contracts[1], NAL chose to accepts the terms in order to continue operating as a Procon distributor and continue purchasing GPS units. Therefore, NAL's promise of accepting the terms

---

[1] NAL had to access both sites containing the Subscription Service Agreement and Master Marketing Agreement in order to conduct operations as a distributor. [D.E. 34 p. 13.] These sites were used to track vehicles as well as purchase Goldstar GPS units.

of the contracts in order to operate as Defendants' distributor was sufficient consideration to bind it to contracts in question.

**IV.     Defendants' Subscription Service and Master Marketing Agreements were not adhesion contracts nor were they posted on Defendants' web sites for purposes of trickery or deceit**

An adhesion contract is a standardized contract form offered to consumers of goods and services on essentially a "take it or leave it" basis without affording the consumer a realistic opportunity to bargain, and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract. Fonte v. AT&T Wireless Svcs, Inc., 903 So. 2d 1019 (Fla. 4th DCA 2005.)

Here, Plaintiff clearly had a choice: it had the option of continuing business relations with Defendants under the new agreement, or purchasing GPS units from another merchant. NAL chose to continue its dealings with Procon, in exchange for the promises it made in its contract with Defendants. NAL was perfectly aware of the contracts' provisions regarding retroactive application and the relevant venue and mediation/arbitration provisions. Plaintiff's lawyer read and analyzed the contracts and had numerous negotiations with Defendants' counsel regarding applicable terms. Plaintiff cannot argue here, that it was forced to accept the terms in question, and had no bargaining power. Its interests were adequately represented and negotiated by its lawyer. In the end, Plaintiff chose to assent to the specified venue and mediation/arbitration clauses freely, without protest, and of its own accord.

In light of the foregoing, the relevant facts and legal precedent dictate that this case be dismissed and/or transferred as per the requirements of the valid, reasonable, and bargained clauses present in the case at hand, and that proceedings be dismissed or stayed to compel mediation and arbitration as per the terms agreed to by all parties.

Dated: October 7, 2009                          KUBICKI DRAPER, P.A.
                                                     Attorneys for Defendants
                                                       City National Bank Building
                                                       25 West Flagler Street, Penthouse
                                                       Miami, Florida 33130
                                                       Direct Line: (305) 982-6632

                                       By:    /s/ Steve W. Cornman
                                                       STEVE W. CORNMAN, ESQ.
                                                       sc@kubickidraper.com
                                                       Florida Bar No.: 0755281

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 7, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list in the manner specified, either via transmissions of Notices of Electronic Filing generated by CM/ECF or by U.S. mail for those counsel who are not authorized to receive electronic Notices of Electronic Filing.

                                                       /s/ Steve W. Cornman

## SERVICE LIST

Elizabeth M. Bohn, Esq.
Jorden Burt, LLP
777 Brickell Avenue, Suite 500
Miami, FL 33131
*Counsel for the Plaintiff*