UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.  09-21765-CIV-COOKE/BANDSTRA

NATIONAL AUTO LENDERS, INC.,

    *Plaintiff*,

v.

SYSLOCATE, INC., *et al.*,

    *Defendants*.

_____/

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND/OR TRANSFER VENUE AND STAY PROCEEDINGS TO COMPEL MEDIATION AND ARBITRATION**

This matter is before me on Defendants' Motion to Dismiss and/or Transfer Venue and Stay Proceedings to Compel Mediation and Arbitration [D.E. 24], Plaintiff's Response in Opposition [D.E. 34] and Defendant's Reply thereto [D.E. 43]. I am denying Defendants' Motion.

### *I. BACKGROUND*

Plaintiff, National Auto Lenders, Inc. ("NAL"), provides indirect lending for car buyers by purchasing installment contracts from retail car dealers in Florida. (Compl. at ¶ 15). NAL has a lien on each vehicle under contract to secure the debt. (Compl. at ¶ 16). In the event of default, NAL has the right to repossess the vehicles. *Id*. NAL uses Global Positioning System ("GPS") units to track the vehicles so that it can locate and recover them on default. (Compl. at ¶ 19). Between March 2007 and April 2008, NAL purchased 2,450 GPS units from Defendants DriveOK, Inc. ("DriveOK") and SysLOCATE, Inc. ("SysLOCATE" or, collectively with DriveOK, "DOS"). (Ramos Aff. at ¶ 28). NAL used SysLOCATE's website to track the

1

vehicles with DOS units. *Id.* at ¶ 29. Many of the DOS units are defective and, as a result, NAL has been unable to locate and repossess the vehicles on default, resulting in approximately $2,500,000.00 in damages. (Compl. at ¶ 65).

In August 2008, NAL and DOS began negotiating a settlement for NAL's losses. (Perez Aff. ¶¶ 6, 7). During the negotiations, SysLOCATE posted a "click-to-accept" end user license agreement ("EULA") on its website. (Perez Aff. at ¶ 10). NAL could not access the website or track its vehicles unless it accepted the EULA. *Id.* The EULA contained language that would have limited NAL's ability to recover losses for the defective DOS units. *Id.* The EULA also contained forum and arbitration clauses. (Ramos Aff. at ¶ 49). NAL's Chief Marketing Officer, Asbel Perez, instructed the entire NAL staff to refrain from logging onto the SysLOCATE website to prevent involuntary acceptance of the EULA. (Perez Aff. at ¶ 11). NAL executives Asbel Perez, Ozzie Ramos and Knox North also informed Defendants that they were NAL's decision makers and solely authorized to enter into agreements on NAL's behalf. (Perez Aff. at ¶ 16).

DOS merged with Defendant Procon, Inc. ("Procon") in November 2008 and Procon became the surviving corporation. (Compl. at ¶¶ 12, 13). Procon sold and continues to sell GPS units to Plaintiff. (Ramos Aff. at ¶ 34). These units are different from the DOS units and not the subject of Plaintiff's claims. *Id.* Plaintiff must access Procon's website to track over 1,900 vehicles with Procon units. (Ramos Aff. at ¶¶ 35, 41). After the DOS-Procon merger, NAL discussed the defective DOS units with Procon executives and former DOS executives now working for Procon. (Perez Aff. at ¶ 14). The parties failed to reach a settlement agreement and NAL sent a letter to Procon on April 14, 2009 that described the extent of DOS unit failures and

demanded payment. (Ramos Aff. at Ex. C). In the demand letter, NAL's counsel stated, "[a]ll communications regarding this matter should be addressed to me, not NAL." *Id.*

On April 17, 2009, Procon posted the Goldstar Agreement on its website. The Goldstar Agreement, *inter alia*, limited Procon's liability for defective units and contained a venue clause and a mediation/arbitration clause. (Ramos Aff. at Ex. D). NAL was unable to track vehicles with Procon units unless it accepted the Goldstar Agreement. (Ramos Aff. at ¶ 56). NAL did not accept the agreement and its counsel sent another letter to Procon on April 20, 2009 confirming NAL's unwillingness to enter into the agreement. *Id.* Procon's counsel sent a letter to NAL's counsel on May 1, 2009, assuring her that Procon would not assert the Goldstar Agreement to NAL's claims related to the DOS units. (Ramos Aff. at Ex. E).

Procon amended the Goldstar Agreement and introduced the Subscription Service Agreement and the Master Marketing Agreement (collectively "May Agreements") on its website in May 2009. (Wells Aff. at ¶¶ 8, 12). NAL could not track vehicles with Procon units unless it accepted the Subscription Service Agreement. *Id.* at ¶ 8. Procon also required customers to accept the Master Marketing Agreement prior to placing orders. *Id.* at ¶ 12. The May Agreements provide that the parties will settle all disputes through a combination of mediation and arbitration. (Defendant's Motion at Ex. 2, 3). If the mediation/arbitration clause is not enforceable, the May Agreements designate Tennessee as the proper venue for any dispute. *Id.* The terms of the May Agreements apply retroactively and supercede any prior or contemporaneous agreements between the parties. *Id.*

There are fifteen NAL employees and five NAL subcontractors that have access to Procon's website. (Ramos Aff. at ¶¶ 42, 43). An NAL employee or subcontractor named Ralph

Long accepted the Subscription Service Agreement on May 29, 2009. (Wells Aff. at ¶ 10). Another unidentified NAL employee accessed Procon's website and accepted the Master Marketing Agreement on June 1, 2009.  (Wells Aff. at ¶ 13).

NAL argues that the May Agreements were accepted by individuals without legal authority to do so.  (Ramos Aff. at ¶ 63). According to NAL, these individuals accepted the May Agreements without authorization while accessing Procon's website to track vehicles. *Id.*  The May Agreements did not appear on Procon's website once they were accepted and the executive officers at NAL did not know they existed until Defendants filed the instant motion. *Id.*

Defendants argue that whoever clicked on the Agreement had apparent authority to accept the Agreement on behalf of NAL. In the alternative, Defendants argue that NAL ratified the Agreement once it was accepted, even if the Agreement was initially accepted by an unauthorized agent of Plaintiff.

## II. LEGAL STANDARD

A motion to dismiss based on a forum selection clause is properly brought pursuant to 12(b)(3) of the Federal Rules of Civil Procedure. *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998), *cert. denied*, 525 U.S. 1093.  Therefore, this court will consider Defendants' forum selection clause arguments under a 12(b)(3) improper venue analysis. In considering a motion to dismiss for improper venue, "the court may consider matters outside the pleadings such as affidavit testimony, 'particularly when the motion is predicated on key issues of fact.'" *Wai v. Rainbow Holdings*, 315 F.Supp.2d 1261, 1268 (S.D. Fla. 2004) (quoting *Webster v. Royal Carribean Cruises, Ltd.*, 124 F.Supp.2d 1317, 1320 (S.D. Fla. 2000)). The court must accept all allegations of the complaint as true and draw all reasonable inferences

4

in favor of the plaintiff. *Wai*, 315 F.Supp.2d at 1268.

It is well settled that parties may contract in advance to select the forum in which their disputes will be adjudicated. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–14 (1972). In federal diversity cases, "28 U.S.C. 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988). The usual rules governing the enforcement of contracts apply to forum selection clauses. *P & S Business Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003). A forum selection clause should be enforced unless a strong showing is made that enforcement would be unreasonable and unjust or that the clause was invalid for such reasons as fraud or overreaching. *Id.*

In reviewing a motion to compel mediation and/or arbitration, a district court considers three factors: (1) whether a valid agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived. *Integrated Sec. Services v. Skidata, Inc.*, 609 F.Supp.2d 1323, 1324 (S.D. Fla. 2009). The court must grant a motion to compel arbitration if it is satisfied that the parties agreed to arbitrate the claims at issue. *Id.*; *see also* 9 U.S.C. § 3. However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steel Workers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

### *III. ANALYSIS*

Defendants argue that Plaintiff is contractually bound by the venue and mediation/arbitration clauses in the May Agreements. I disagree. The individuals that accepted the May Agreements did not have legal authority to bind Plaintiff. Defendants argue that these

individuals had apparent authority to accept the May Agreements on behalf of Plaintiff.

Under the doctrine of apparent authority, an agency will arise when the principal allows or causes others to believe that an individual has authority to conduct the act in question, inducing their detrimental reliance. *Borg-Warner Leasing, a Div. of Borg-Warner Acceptance Corp. v. Doyle Elec. Co., Inc.*, 733 F.2d 833, 836 (11th Cir. 1984). There are three elements "needed to establish apparent agency: (1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by a third party in reliance on upon such relationship." *Blunt v. Tripp Scott, P.A.*, 962 So.2d 987, 989 (Fla. 4th DCA 2007). "The reliance of a third party on the apparent authority of the principal's agent must be reasonable and rest in the actions of or appearances created by the principal . . . and not by agents who often ingeniously create an appearance of authority by their own acts." *Id.* (internal citations omitted).

I find that the elements needed to establish an apparent agency relationship were not established in this case. Plaintiff's actions did not create the appearance that two non-executives at NAL were authorized to contractually bind Plaintiff to the May Agreements. Plaintiff's executives Asbel Perez, Ozzie Ramos and Knox North specifically told Defendants that they were NAL's decision makers and solely authorized to enter into agreements on NAL's behalf. Plaintiff then authorized Counsel to communicate directly with Defendants regarding the claims asserted in the instant case. Counsel never indicated to Defendants that Plaintiff's employees or subcontractors were authorized to enter into electronic agreements posted on Defendants' website. In fact, Plaintiff's Counsel indicated in writing that Plaintiff was not willing to accept the Goldstar Agreement, which was substantially similar to the later May Agreements.

Therefore, it was unreasonable for Defendants to believe that the individuals who accepted the May Agreements were authorized to do so. Defendants' reliance is especially unreasonable in this case because Defendants were aware that: (1) individuals unauthorized to accept the May Agreements had access to Procon's website; and (2) these individuals needed to accept the May Agreements in order to track vehicles.

Defendants also argue that Plaintiffs ratified the May Agreements even if they were initially accepted by two unauthorized employees. Again, I disagree. "A ratification occurs when the benefits of the purportedly unauthorized acts are accepted with full knowledge of the facts under circumstances demonstrating the intent to adopt the unauthorized arrangement." *In re Securities Group*, 926 F.2d 1051, 1054 (11th Cir.1991). "Before one may infer that a principal ratified the unauthorized act of his agent, the evidence must demonstrate that the principal was fully informed and that he approved of the act." *United Parcel Serv., Inc. v. Buchwald Jewelers*, 476 So.2d 772, 773 (Fla. 3d DCA 1985). The May Agreements disappeared from Defendants' website after Plaintiff's agents clicked through to accept them. Those authorized to accept the May Agreements were not aware that they existed until Defendants filed the instant motion. Therefore, Plaintiff did not have knowledge of the May Agreements or demonstrate an intent to adopt its terms. Accordingly, I find that Plaintiff did not ratify the unauthorized acceptance of the May Agreements.

### *III. CONCLUSION*

Accordingly, Defendants' Motion to Dismiss and/or Transfer Venue and Stay Proceedings to Compel Mediation and Arbitration [D.E. 24] is **DENIED**.

**DONE AND ORDERED** in Chambers, Miami, Florida this 10th day of February 2010.

*/s/ Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

cc:

The Honorable Ted E. Bandstra

All counsel of record